**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **BRENDA DAVIS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:10CV602 |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| Commissioner of Social Security, ) | |
| ) | |
| **Defendant.** ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Brenda Davis, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 11) and motion to remand (docket no. 12) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 17) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on April 30, 2008, claiming disability due to fibromyalgia, neck and shoulder problems, vision problems, and depression, with an alleged onset date of April 28, 2007. (R. at 102-07, 131, 136.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 58-60; 70-71.) On August 7, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 23-52.) On November 9, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience, and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 11-18.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-7.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were

applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 13.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of cervical stenosis, degenerative disc disease of the cervical spine, and depression, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 13-15.) The ALJ next determined that Plaintiff had the RFC to perform light work, except that she was limited to unskilled work that did not require rapid rotation of the neck. (R. at 15-17.) Further, Plaintiff was limited to only occasional use of her hands for fine manipulation. (R. at 15-17.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a nurse or housecleaner because of the levels of exertion required in each position. (R. at 17.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 17-18.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 18.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law; or, in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ improperly weighed the opinion of consulting physician Dr. Fielding; and (2) the ALJ did not include all of Plaintiff's limitation in the RFC analysis. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 16-

22.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 16-24.)

      **A.     The ALJ properly evaluated the medical and opinion evidence.**

Plaintiff argues that the ALJ "completely and irrationally dismissed the opinion of Dr. Felding [sic]." (Pl.'s Mem. at 17.) Plaintiff asserts that Dr. Fielding's opinion is corroborated by the evidence of record, including a report completed by state physician Dr. Alan Entin. (Pl.'s Mem. at 17-18.) Plaintiff also claims that "just looking at the medication that was prescribed by pain doctors supports her levels of pain," which ultimately supports Dr. Fielding's opinion. (Pl.'s Mem. at 17.) Plaintiff contends that the ALJ was "simply irrational" is dismissing Dr. Fielding's opinion that Plaintiff's depression is affected by her medical condition and that her depression would worsen as her physical condition deteriorated. (Pl.'s Mem. at 18.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

The ALJ did not completely and irrationally disregard Dr. Fielding's opinion.[6] On the contrary, the ALJ explicitly discussed Dr. Fielding's observations with Plaintiff's counsel during her hearing on August 7, 2009. (R. at 37, 49.) The ALJ also addressed Dr. Fielding's report in the written decision. (R. at 16.) The ALJ stated that "[a]lthough Dr. Fielding indicated that the claimant's condition was susceptible to deterioration if totally left to her own recognizance and that her depression would become more significant if her medical condition does not resolve, the evidence indicates that the claimant does not participate in mental health therapy." (R. at 16.) The ALJ also noted that the evidence did not support any significant change in her personality and behavior now compared with her premorbid status. (R. at 16.) Indeed, Plaintiff claimed to have stopped working "due to [her] condition" in August 2001, yet her alleged onset date is April 28, 2007. (R. at 136.) Notably, the ALJ stated that treating sources had not assessed any significant limitations or restrictions in functioning, and that Plaintiff's limitations appeared to be self-limiting. (R. at 16.)

The Court notes that Dr. Fielding's opinions are not as restrictive as Plaintiff apparently asserts. Dr. Fielding noted that in terms of Plaintiff's depression, she did not mention problems completing tasks, but rather referenced her general medical condition as restricting her. (R. at 206.) Dr. Fielding also noted that Plaintiff stated she was compliant with her medication schedule without side effects, yet she did exhibit significant pain behavior. (R. at 207.) Dr. Fielding went on to state that Plaintiff "[did] not appear at all depressed but more annoyed and

---

[6] Also, Dr. Fielding's observations are only of limited importance, as the ALJ noted during the hearing that she was reluctant to even consider the opinion as it fell outside of the relevant time period. (R. at 49.) Though Plaintiff alleges an onset date of April 28, 2007, this appeal only concerns an application for SSI payments. Therefore, Plaintiff cannot be found disabled before her protective filing date of April 30, 2008. (R. at 37, 49.) Dr. Fielding's report was completed in March 2006, approximately two years before the first date Plaintiff could be found disabled. Because the ALJ decided to consider the report, however, so does this Court.

8

talkative," and that she had mild depression but did not meet clinical criteria for a major depressive order. (R. at 209.) Dr. Fielding also noted that Plaintiff would be able to complete a normal workweek and accept and carry out instructions if she only had to deal with depression, implying that Plaintiff's condition could be exacerbated by other impairments, and would be if her medical condition did not resolve. (R. at 209-10.) However, as the ALJ noted, there is no evidence to suggest that Plaintiff has engaged in mental health therapy since Dr. Fielding's examination in 2006.

Treatment notes indicate that in April 2007, Plaintiff's neurologist, Dr. Mathern, noted that her cervical MRI revealed only minor degenerative changes, that a neurological follow-up examination was not necessary, and that it appeared that Plaintiff had a significant pain management problem. (R. at 238-40.) In May 2007, Plaintiff complained of depression and was advised to increase her dosage of the medication Paxil. (R. at 237.) In June 2007, after Plaintiff's alleged onset date, one of Plaintiff's treating physicians, Michael F. Miles, M.D., noted that there was no reason why Plaintiff could not be employed as a teacher's assistant. (R. at 236.) In November 2007, treatment notes indicate that Plaintiff was complaining of chronic pain in her neck, hands, and arms; yet examination findings were out of proportion to objective findings in her MRI which showed essentially no change between 2005 and 2007. (R. at 232-33.)

In March 2008, Plaintiff underwent a physical therapy evaluation. (R. at 244-46.) The therapist explicitly noted that he did not perform functional capacity evaluations, and he recommended that such an evaluation be performed to document Plaintiff's consistency of effort, as disability was her primary focus during the visit. (R. at 244-46.) Plaintiff also indicated during the visit that she had had pain management, physical therapy, and psychiatric treatment

9

for her pain, yet evidence of such does not appear in the record. (R. at 244-46.) In May 2008, Dr. Miles noted that there was no clinical reason for Plaintiff's alleged deterioration in her condition, and referred her to a pain management specialist.[7] (R. at 230.) In September 2008, treatment notes from Dr. Miles indicate that Plaintiff complained of neck pain and an inability to hold items or write. (R. at 271.) However, Dr. Miles also noted that a rheumatology work-up was negative and that an MRI revealed minimal disc herniation. (R. at 271.) Dr. Miles advised Plaintiff to stop smoking and exercise, and recommended that she follow-up with a psychiatrist for depression. (R. at 271.)

Dr. Alan Entin performed a psychiatric review on October 10, 2008, in which he found that Plaintiff had marked limitations with regard to detailed instructions, and moderate limitations in regard to the general public, responding appropriately to changes in a work setting, setting realistic goals, and making plans independently of others. (R. at 307-09.) Dr. Entin also found that the opinions from Dr. Fielding's 2006 report were consistent with his determined RFC, and accordingly assigned "great weight" and adopted in his assessment. (R. at 309.) Despite these limitations, however, Dr. Entin opined that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis. (R. at 309.) Although Dr. Entin also stated that Plaintiff had another co-existing non-mental impairment that required review by another specialty, his statement does not necessarily support the contention that Plaintiff's depression would worsen as her physical condition deterioriated, as Plaintiff seems to suggest. (Pl.'s Mem. at 18.)

---

[7] Treatment notes also indicate that Plaintiff was referred to a pain specialist as early as June 2006, yet she had not seen the specialist. (R. at 243.)

It is clear that the ALJ did not "completely and irrationally" dismiss the opinions of Dr. Fielding. The ALJ assigned appropriate weight to Dr. Entin's opinion in rendering the RFC, and, as noted, Dr. Entin assigned Dr. Fielding's opinions great weight in his own RFC assessment. Further, Plaintiff has not provided any evidence that her depression is substantially affected by her medical condition and that her depression would worsen as her physical condition deteriorated, other than Dr. Fielding's one-time opinion in March 2006. A statement that "just looking at the medication that was prescribed by pain doctors supports her levels of pain" is simply not sufficient. (Pl.'s Mem. at 17.) Surely, Plaintiff is not suggesting that just because one is on pain-relieving medication necessarily means that they experience pain that precludes them from all substantial gainful activity. Such would suggest that any person on strong pain-relieving medications would be disabled, regardless of the effectiveness of the medication.

Accordingly, because substantial evidence supports the ALJ's analysis of the opinion evidence, the Court recommends that the ALJ's decision in this regard be affirmed.

**B.    The ALJ properly included only those limitations in the RFC analysis that were supported by substantial evidence.**

Plaintiff further argues that the ALJ failed to include the limitations suggested by state agency physician Dr. Juan Astruc in the determination of Plaintiff's RFC. (Pl.'s Mem. at 19.) Plaintiff asserts that Dr. Astruc's opinion that Plaintiff had bilateral limitations that significantly interfered with the functioning of her hands was disregarded by the ALJ, and that had the ALJ addressed such limitations, Plaintiff would be found disabled and unemployable. (Pl.'s Mem. at 19.) Plaintiff also contends that pain and medications interfere with her ability to concentrate, yet the ALJ failed to include the side effects of drowsiness in his RFC. (Pl.'s Mem. at 19-20.) Finally, Plaintiff asserts that the ALJ did not consider Plaintiff's "uncontroverted mental health

limitations" in concentration or pace, ability to maintain social functioning, or ability to remember detailed instructions. (Pl.'s Mem. at 20-21.)

Plaintiff is mistaken that the ALJ disregarded Dr. Astruc's opinion on Plaintiff's fingering limitations. Notably, Dr. Astruc never opined that Plaintiff could not perform fingering at all; rather, Dr. Astruc noted that Plaintiff's fingering limitations "significantly interfere[d]" with her functioning. (R. at 289.) The ALJ's conclusion, then, that Plaintiff could tolerate only occasional use of her hands for fine manipulation, is consistent with Dr. Astruc's opinion. See generally SSR 85-15.

Plaintiff's reliance on the VE's testimony, namely, that a person who is precluded from using her hands for any fingering or fine manipulation would be disabled, is also misguided. (R. at 47-48.) While true that such a person would be disabled, Plaintiff is not a person who is precluded from *all* use of her hands for fingering and fine manipulation. Rather, Plaintiff is a person who has *significant* limitations in these activities. Consequently, the VE's testimony that the occupations of ticket taker, usher, and laundry folder required only occasional fingering is consistent with the ALJ's conclusion that Plaintiff could perform such occupations, as she is a person who has significant, but not total, limitations in the use of both of her hands.

With regard to Plaintiff's alleged condition of intermittent drowsiness, the Fourth Circuit has recognized that "'[d]rowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.'" Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (quoting Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002)). Moreover, other than Plaintiff's own statements[8] that her medications caused drowsiness, there is no other medical evidence that reflects serious functional limitations.

---

[8] The Court notes that Plaintiff has not challenged the ALJ's credibility analysis.

The Court is also not persuaded by Plaintiff's contention that the ALJ erroneously failed to consider Plaintiff's mental health limitations. It is quite clear that the ALJ did indeed take into consideration Plaintiff's alleged mental health limitations. For example, with regard to Plaintiff's inability to remember detailed instructions, the ALJ limited Plaintiff to unskilled work, which by definition does not entail following or remembering detailed instructions. 20 C.F.R. § 416.968(a); SSR 83-10, SSR 85-15. Further, simple unskilled work generally does not involve interacting with the general public, which addresses Plaintiff's alleged inability to maintain social functioning. See SSR 85-15. With regard to Plaintiff's impairments regarding maintaining concentration or pace, Dr. Entin opined that despite Plaintiff's limitations she would still be able to complete a normal workweek. (R. at 307-09.)

Accordingly, because the ALJ included all limitations that were supported by substantial evidence in the RFC analysis, the Court recommends that the ALJ's decision be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 11) and motion to remand (docket no. 12) be DENIED; that Defendant's motion for summary judgment (docket no. 17) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of**

**any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                /s/
                                          DENNIS W. DOHNAL
                                          UNITED STATES MAGISTRATE JUDGE

Date: September 8, 2011
Richmond, Virginia